The City of Philadelphia to use of John McCann v. The Philadelphia & Reading Railroad Company, Owner and Registered Owner, Appellant.

*Railroads—Municipal lien—Municipal improvements—Sewers—Act of April 21, 1858.*

Under the act of April 21, 1858, P. L. 385, which provides that: " The offices, depots, car-houses and other real property of railroad corporations situated in said city of Philadelphia, the superstructure of the road and water stations only excepted, are and hereafter shall be subject to taxation by ordinances for city purposes," it is *held* (1) that by the word " superstructure " is meant the roadbed with whatever had been constructed upon it; (2) that the words " subject to taxation by ordinances for city purposes," means not only taxation for ordinary revenue, but also assessments for municipal improvements.

A municipal claim for a sewer was filed against land owned by a railroad company in Philadelphia, extending for fifteen hundred feet along a street, and running back from the street for a considerable distance to the Delaware river. The land was covered throughout with a great number of diverging railroad tracks, and was used as a terminus for exporting coal and iron ore. The railroad company was authorized to appropriate for roadbed a strip of land sixty-six feet wide, and it could also appropriate land for sidings and turn-outs for the speedy and safe passage of its cars. The main line of the railroad extended through the land against which the lien was filed. *Held*, (1) that a lien would lie against the land for a sewer; (2) that the fact that the court could not say how much of the land was roadbed would not prevent the entry of judgment on the lien, as a sale of the land would pass to the purchaser nothing the lien did not bind. ·

*Railroads—Transfer of franchise.*

The franchises and corporate rights of a railroad company and the means vested in it which are necessary to the existence and maintenance of the object for which it was created are incapable of being granted away, and transferred by any act of the company itself, or by any adverse process against it.

Argued March 26, 1896. Appeal, No. 223, July T., 1895, by defendant, from order of C. P. No. 4, Phila. Co., March T., 1895, No. 136, M. L. D., making absolute a rule for judgment for want of a sufficient affidavit of defense. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and DEAN, JJ. Affirmed. MITCHELL, J., dissents.

Scire facias sur municipal lien for a sewer.

The facts appear by the opinion of the Supreme Court.

*Error assigned* was order, making absolute a rule for judgment for want of a sufficient affidavit of defense.

*Thomas Hart, Jr.*, for appellant.—The roadbed of a railroad company is not liable to a municipal claim for a local improvement in front of it or alongside of it, whether the same be merely a right of way or owned in fee : Phila. v. P., W. & B. R. R., 33 Pa. 41; Junction R. R. v. City, 88 Pa. 424; Pa. Sch. Val. R. R. v. Reading Paper Mills, 149 Pa. 18; Pitts., Ft. Wayne & C. R. R. v. Peet, 152 Pa. 488; Audenreid v. R. R., 68 Pa. 370.

A line of cases in Pennsylvania has settled the status of such constructions. The word "railroad" includes, ex vi termini, sidings: Phila., Wilmington & Balt., etc., R. R. v. Williams, 54 Pa. 103; R. R. v. Speer, 56 Pa. 325; R. R. v. Black, 58 Pa. 249; Getz v. R. R., 10 W. N. C. 453.

The late cases upon this subject have indeed confined assessments for benefits arising from local improvements to properties immediately adjoining the improvements, which must appear to confer peculiar local benefits upon the property assessed: Morewood Ave., 159 Pa. 20; Fifty-fourth Street, 165 Pa. 8; Park Avenue Sewers, 169 Pa. 433; Witman v. Reading, 36 W. N. C. 528; R. R. v. Berks, 6 Pa. 70; Wayne Co. v. Del. & H. Canal Co., 15 Pa. 351.

It was very early decided that a railroad or canal and its necessary appurtenant works were not taxable as "land" or "real estate:" Leh. C. & N. Co. v. Northampton, 8 W. & S. 334; Reading R. R. v. Berks, 6 Pa. 70; D. & H. Canal Co. v. Commrs., 15 Pa. 351; Northampton Co. v. L. C. & Nav. Co., 75 Pa. 461.

The roadbed of a railroad is not liable for the cost of a sewer in a street: Northern Liberties v. The Church, 13 Pa. 104; Washington Avenue, 69 Pa. 352; Pray v. Northern Liberties, 31 Pa. 69; Borough v. Young, 53 Pa. 280; Erie v. The Church, 14 W. N. C. 232; Mt. Pleasant Borough v. R. R., 138 Pa. 371; Pettibone v. Smith, 150 Pa. 126; R. R. v. Decatur, 147 U. S. 190; New Castle v. Stone Church Graveyard, 37 W. N. C. 283; Com. v. Marshall, 69 Pa. 328.

If the lien in the case now before the court can be sustained, of course the property liened ought to be able to be sold and title passed to the purchaser, but that cannot be. The property and franchises of a corporation cannot be sold piecemeal under executions: Graham's Executors v. P. & O. Canal Co., 3 Pitts. L. J. 341; Canal Co. v. Bonham, 9 W. & S. 27; Bayard's App., 72 Pa. 453; Longstreth v. R. R., 11 W. N. C. 309; Com. v. S. & Del. R. R., 122 Pa. 306; Plymouth R. R. v. Colwell, 39 Pa. 337; Shamokin Valley R. R. v. Livermore, 47 Pa. 465; City of Dubuque v. R. R., 47 Iowa, 202; E. & P. R. R. v. Elizabethtown, 12 Bush, 238; Porter v. R. R., 76 Ill. 584; Allegheny City v. West Penna. R. R., 138 Pa. 375.

*William Kelly*, with him *John M. Ridings*, for appellee.— Under the act of April 21, 1858, the premises in question are liable to the cost of the sewer laid in front thereof: R. R. v. Berks Co., 6 Pa. 70; Commissioners of Wayne v. Del. & Hudson Canal Co., 15 Pa. 351; Church's App., 165 Pa. 477; New Castle v. Stone Church Graveyard, 37 W. N. C. 283; R. R. v. Decatur, 147 U. S. 190; Phila. v. Phila. & Read. R. R., 38 W. N. C. 15; Phila. v. North Penna. R. R., 38 W. N. C. 22.

The only question raised by the proceedings in these cases is whether the property liened is, under the law, liable for the cost of the sewer. The question of how the same is to be collected does not arise, and is something with which, as said by the Supreme Court, In re Berks Street, 12 W. N. C. 10, they have nothing to do, and in the case of Howard Street, 142 Pa. 601, the court disposed of the same question by saying that it did not arise in that case and might never arise.

OPINION BY MR. JUSTICE DEAN, October 5, 1896:

The defendant is the owner of a large lot of ground in the city of Philadelphia, fronting on Richmond street about one thousand five hundred and forty-seven feet, and extending back to the Port Warden's line on the Delaware river. Against this property, the city filed a municipal lien for part of the cost of constructing a sewer on Richmond street between Cumberland and Williams streets. Sci. fa. was issued on the lien, to which defendant made affidavit of defense, of which this is the material averment:

" The said large lot of ground is entirely and exclusively used as the tidewater coal and iron ore terminal of the Philadelphia & Reading Railroad Company.

" As appears by the said plan, which is an accurate representation of the place, it is covered throughout with a great number of diverging railroad tracks, the said main line entering the property near Somerset 'street, and spreading out and running to the ends of the wharves, some twenty in number, whereby coal is shipped into vessels for export and iron ore is received from vessels bringing the same here and loaded into the cars for inland transportation. Engines traverse all the tracks as upon other parts of the railroad.

" The said lot of ground is an absolutely necessary part of the railroad of the said company."

There was a rule for judgment for want of a sufficient affidavit of defense, which the court below, in opinion filed (4 Dist. Rep. 453), made absolute, and defendant appeals.

It was decided the roadbed of a railroad is not, as land, subject to general taxation, nor to special assessments for city improvements, in City v. Railroad Co., 33 Pa. 41. This case was decided in 1856, but not reported and published until 1859, so that the act of April 21, 1858, P. L. 385, could not have been before the court. The facts of the case show it was a scire facias on a municipal lien for paving along the railroad which occupied a strip of land two thousand and forty-six feet long by forty-seven feet wide. The court below says : " The single question is whether the remedy by scire facias on the claim filed can be enforced against a corporate body clothed with the usual railway franchise. The process which the plaintiff seeks to use is directed wholly against the soil of the railway, together with the structure of the railway itself, and upon a judgment upon it for the plaintiff, this corpus may be sold under a levari facias to the highest bidder at a sheriff's sale. To authorize this would be to inflict a serious public evil ; and this, too, without the pretext of a benefit having been received by the company by reason of the paving of the public highway contiguous to the railroad." The court then cites a number of cases in this state which hold certain kinds of real estate cannot be taken away from the company by sale under the ordinary forms of adverse process ; that even conceding the railroad company might be charged in some

mode of proceeding with the cost of paving, the proceeding by scire facias, and levari facias, was not the proper one, because directed against the roadbed. The judgment was affirmed in this court for two reasons, in substance the same as those given by the court below: 1. The claim had no foundation in the letter or spirit of the law. 2. The form of the remedy was one which was inapplicable as against a corporation operating a public highway, because it would destroy that in which the public had an interest.

The decisions of the court below and this court are based mainly on the absence of statutory authority to seize and sell for assessments the roadbed of a railroad company as land ; and reasons of more or less force are given why the absence of such authority is wise.

While the facts in this case show the decision was eminently just, for the sale sought to be enforced by a levari facias was of a strip of land only forty-seven feet wide, on which was the actual structure of the railroad, yet the cases decided up to that time show the exemption of property from taxation on the plea that it was an indispensable part of the corporate franchise, had reached a point which in the legislative mind was no longer tolerable. Water stations, depots, toolhouses, reservoirs, houses and gardens of lock-tenders and collectors, engines and machinery for raising cars up planes, collectors' and engineers' offices, all were exempt on the ground they were indispensable to the exercise of the franchise. As noticed, this last decision was in 1856, but then came the act of April 21, 1858, which contains this provision: " The offices, depots, car-houses and other real property of railroad corporations situated in said City (Philadelphia), the superstructure of the road and water stations only excepted, are and hereafter shall be subject to taxation by ordinances for city purposes." From its plain words, this was not an act defining what amount or what character of taxes might be imposed on corporate property, but an act declaring what property thereafter should not be exempt and what should be from taxation. It brought again within the taxing power a very large amount of property which under the former decisions of this court had escaped. And it declared in explicit terms the superstructure and water stations should be exempt. Although the word superstructure might, in present railway engineering

phraseology, be limited to sleepers, rails and fastenings (see "superstructure," Century Dictionary), yet we have no doubt the legislature of that day, adopting the ordinary meaning of the word, intended by it the roadbed with whatever had been constructed upon it; except this and water stations, railroad real estate should be subject to taxation.

But it is argued the words, "subject to taxation by ordinances for city purposes," only mean taxation for ordinary revenue, and give no authority to assess for municipal improvements. Under the authorities the word taxation does not always indicate a power of assessments for local improvements; the purpose as well as the language of the act may exclude such power. But this act plainly includes the power. The purpose as declared in the preamble is the equalization of the public burden; the burden, under the decisions, had not been theretofore shared equally, if the landowner for fifteen hundred feet of a large lot on one side of Richmond street escaped assessments for municipal improvements, while the lot owners on the opposite side paid the whole; the intention was inequality should be remedied; how? By conferring power to tax it by "ordinance for city purposes." The construction of the sewer is a city purpose; therefore the power to assess for payment of the cost of it, theretofore limited, is thereafter almost unrestricted. The power conferred is intended to be ample, that the evil before existing because of want of it should be remedied. We are of opinion this act conferred fully on the city the power here claimed to assess by ordinance railroad real estate for local improvements.

The Junction Railroad case, 88 Pa. 428, following City v. Railroad Co., supra, declares the roadbed exempt, but recognizes the well marked distinction made by the act of 1858 between the roadbed and other real estate of the company. The claim in the Junction Railroad case was filed against the strip of land constituting the roadbed, and on that ground, was not sustained. Nor can the roadbed here be made subject to this lien. Just what portion of this land is subject to lien for this assessment we do not decide. Clearly a large part of it is not roadbed. The affidavit and map filed show a large part of the land is a coal yard or terminal. Defendant by its act of incorporation is authorized to appropriate for roadbed a strip of land

four rods or sixty-six feet wide; in addition, it can appropriate land for sidings and turnouts for the speedy and safe passage of its cars; land so taken would properly be termed roadbed, and be exempt from taxation; but a tract of land one thousand five hundred feet wide, extending from Richmond street to the river, used as a coal and ore, terminal, is not a roadbed any more than the private coal yards in the city, where, by turnouts and sidings, the company dumps coal, are parts of the roadbed. All are appurtenant to the business of the road, but are not an integral part of it in conducting its business as a carrier. If it did not provide these terminal facilities, private individuals, with a view to profit, would. The complete control of such a yard by the company doubtless adds to the efficiency and economy of shipment and delivery after the coal is carried between point of consignment and destination, and the company may properly own and control the land as a stimulant to its business; but if it chooses to do so it must pay municipal assessments as other real estate owners. While we can from this record determine that a large part of this one thousand five hundred feet is not roadbed, we cannot say just how much is; but that fact prevents not the entry of judgment; the plaintiff has a lien on the land in excess of that not subject to municipal assessment; a sale of the land passes to the purchaser nothing the lien does not bind; he takes it subject to defendant's easement.

In Howard Street, 142 Pa. 601, our Brother MITCHELL, in passing on the constitutionality of this act of 1858, as to the apportionment of benefits and damages, suggests that serious difficulties may arise from lack of provision for collection and distribution, but he says, none of them arise in that case and they may never arise. A similar question was raised in Berks Street, 12 W. N. C. 10, where the court says, it is something with which it has nothing to do. The same argument is presented here, that is, the insufficiency of the process to enforce the judgment. We might pass the question, as was done in the other cases, as one which could only arise when the writ was issued on the judgment. But the difficulties presented in the cases cited, which were to assess and apportion damages and benefits caused by the opening of streets, do not appear here. The city has its judgment in rem against land on which defend-

ant had, under the law, before the filing of the municipal lien, a visible, notorious easement or right of way to the extent of its roadbed; no adverse process could disturb it in the enjoyment of this easement, for as is held in Canal Co. v. Bonham, 9 W. & S. 27, and the many cases following it, "The franchises and corporate rights of a company and the means vested in it which are necessary to the existence and maintenance of the object for which it was created, are incapable of being granted away and transferred by any act of the company itself, or by any adverse process against it." The roadbed running to the river through this yard being necessary to the existence of the road as a common carrier cannot be taken from it by a proceeding in rem against the yard; the purchaser takes subject to the easement, just as the purchaser of land at sale under a mortgage takes subject to an open, visible easement antedating the mortgage. The argument of appellant's counsel, although a most able one, does not treat the act of 1858 as the undoubted law on which the case turns; we are clearly of the opinion the city's claim is sustained by this act; that it, in effect, negatived a large number of the decisions of this court announced before its passage, in view of the statutes on this subject then existing. Since 1858 what land held by railroads in Philadelphia shall be assessed for municipal improvements is no longer a judicial question, that statute has answered it in unmistakable terms.

The judgment is affirmed.