# New Castle *v.* Pittsburgh, Youngstown & Ashtabula Ry. Co., Appellant.

*Railroads — Municipal liens — Right-of-way — Exemption from local taxation.*

1. A strip of ground which forms part of the roadbed of a railway company, and is included in its right-of-way, is not liable to a municipal claim for the improvement of a street running parallel and adjoining such roadbed.

2. The property of a railroad company used exclusively for railroad purposes, and having no buildings or stations constructed thereon, may properly be termed roadbed and, will be exempt from local taxation.

*Railroad—Municipal claims—Sufficient affidavit of defense.*

An affidavit of defense is sufficient to a claim for municipal assessments for the paving of a street adjacent to railroad property which sets forth that the land in question is used for railroad purposes, was acquired for the purpose and use of its right-of-way, and is indispensably necessary for the operation of its railroad.

Argued April 22, 1919.   Appeal, No. 106, April T., 1919, by defendant, from judgment of C. P. Lawrence

136 NEW CASTLE v. PITTSBURGH, Y. & A. RY. CO., Appel.

Statement of Facts—Opinion of the Court. [72 Pa. Superior Ct. Co., March T., 1911, No. 40, for plaintiff, for want of a sufficient affidavit of defense in case of City of New Castle v. New Castle and Beaver Valley Railroad Company, and Pittsburgh, Youngstown and Ashtabula Railway Company. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, WILLIAMS and KELLER, JJ. Reversed.

Rule for judgment for want of a sufficient affidavit of defense. Before EMERY, P. J.

The facts are stated in the opinion of the Superior Court.

The court made absolute the rule for judgment for want of a sufficient affidavit of defense.

*Error assigned* was the decree of the court.

*Oscar L. Jackson,* and with him *Charles R. Davis,* for appellants.—The roadbed of a railroad company is not liable to a municipal claim for street improvements: Phila. v. R. R. Co., 33 Pa. 41; Junction R. R. Co. v. City of Phila., 88 Pa. 424; Allegheny City v. West Penn R. R. Co., 138 Pa. 375; Mt. Pleasant Boro. v. R. & O. R. R. Co., 138 Pa. 365.

The affidavit of defense was sufficient: Knerr v. Bradley, 105 Pa. 190; Johnson v. Callery, 173 Pa. 129.

*James A. Gardner,* City Solicitor, for appellee.—The property in question was assessable for street improvements: Mt. Pleasant Boro. v. Balt. & Ohio R. R., 138 Pa. 365; Phila. v. Phila. & Reading R. R., 1 Pa. Superior Ct. 236; Phila. v. North Phila. R. R. Co., 1 Pa. Superior Ct. 254; Junction R. R. Co. v. Phila., 88 Pa. 428; Phila. v. P. & R. R. Co., 177 Pa. 292.

OPINION BY ORLADY, P. J., July 17, 1919:

The City of New Castle by a proper ordinance directed the grading of Newell avenue along and in front of the abutting properties of the defendant railway company.

After the street was graded viewers were appointed, a report made and finally confirmed, which assessed the land of the defendant described in the municipal claim, fronting 250 feet, more or less, on Newell avenue, and extending back therefrom 90 feet, more or less, being lot No. 29, on the map or plan annexed to the viewer's report "for benefits, for the payment of the cost and expenses of said work and improvement." A scire facias sur municipal claim was issued, and after an affidavit of defense was filed a rule for judgment for want of sufficient affidavit was made absolute and the amount liquidated by the prothonotary, at $375.

The allegations of fact contained in the affidavit of defense must be accepted as verity, and from it, it appears that the defendant company by consolidation and merger of other railroad companies is the owner of all the land involved in this proceeding, either through condemnation proceedings or by purchase. Over a half century ago the original location of the land now in dispute was in open country. A strip 50 feet wide, the whole length of 250 feet, as described in the lien, was appropriated, and for about 15 years operated by the original railroad as a part of its main track. In 1878, the original railroad (The New Castle & Beaver Valley), in order to avoid a grade crossing with another railroad then being built in that vicinity, located and constructed another track at a lower grade about 100 feet southeast of the former one, and thereafter used it for its main line. After the new or substituted construction was completed, the old main line track was not operated,—the rails were taken up and used elsewhere. In 1899, on account of the increase in railroad business at New Castle, the rails were relaid on the original right-of-way of the New Castle & Beaver Valley line, being placed substantially on the same ground the first track occupied, and since that date this track has been in continuous occupancy and use by the merged and consolidated roads as a part of their right-of-way, in the operation of the railroad as a common carrier of

freight and passengers. This relaid track has been specially used "as a team track for the loading and unloading of freight from cars; temporary storage of cars, principally freight cars, which are shifted in and out daily in the operation of the railroad in carrying freight, and is used for the receipt and discharge of inbound and outbound, inter and intrastate freight," in connection with the main line of the defendant's railway, and it is alleged in the affidavit, that this relaid track is,—"essential and indispensable to the railway in the exercise of its functions as a common carrier. It is the only track available for these uses in that vicinity."

Another strip of land included in the lien, is a parcel of 40 feet in width, and 250 feet long, adjoining the land above described as the right-of-way of the New Castle and Beaver Valley road, which right-of-way separates it entirely from Newell avenue. The affidavit concludes, "All of said real estate described in said lien and scire facias is railroad property in actual use of the Pennsylvania company, lessee of the Pittsburgh, Youngstown & Ashtabula Railway. That it is a necessary part of said railroad and is exempt from charge, taxation and lien for the grading in this case for the reason that the said real estate and property is essential and indispensable to the railroad in the exercise of its functions as a common carrier."

The court below in an opinion filed, concluded that the affidavit of defense was not sufficient to prevent judgment on the lien, and relied on Philadelphia v. Phila. & Reading R. R. Company, 1 Pa. Superior Ct. 236, in which RICE, P. J., states, "There is a manifest difference between the railroad with a narrow strip of ground which forms the right-of-way of a railroad, and the lot of land owned in fee and traversed by the tracks of a railroad company, but part of which lot is 'but a convenient possession affording facilities in conducting the business of the company enabling it to make money.' The former cannot possibly be benefited by the local improvement, or

at least some local improvements, while the latter may be;
—the former is such an integral and indispensable part of
the railroad—without which it would not be a railroad,—
that it cannot be sold separate from the franchise; whilst
in the latter case a part of the land at least could be de-
voted to any legitimate purpose and could be sold by the
company or by adverse process without dismemberment
of the railroad or preventing it from performing all the
functions in which the public are interested."

That case and the present one are clearly different in
the controlling facts, in that, the land sought to be
liened was described as follows: "As the coal and iron
terminal of the defendant company, and it appears by the
draft attached to, and made part of, the affidavit, that
the main tracks of the company's railroad enter the tract
at a point to the south of the lot in question, and thence
by numerous diverging branches and switches lead to the
wharves, some twenty in number, where coal is loaded
into vessels for export, and iron ore is received from ves-
sels and loaded in cars. A great portion of the particular
lot is traversed by these tracks, but not all of it. On the
Richmond street front there appears to be a considerable
space of varying depth, but extending across the whole
front of this lot, which is not occupied by tracks. In this
space the map shows a small building designated as su-
perintendent's office, a larger building not described, and
the 'Dodge Coal Storage Plant.' We are not informed
what the plant is, but assume that it is what its name im-
plies, a place for the storage of coal, and that it is owned
and used by the defendant company. The averment in
the affidavit that the lot is 'covered throughout with a
great number of diverging railroad tracks must be taken
with the foregoing qualifications which an inspection of
the map makes necessary,'" and the land was evidently
purchased independent of its original location of main
line tracks.

It is conceded by the appellee that under the facts set
forth in the affidavit of defense, this land is not liable to

taxation—general taxation—for the reason that our Supreme Court decisions have held that where the lands of public service corporations, including railroads, are taken into consideration in the assessment of State taxes, the said lands are exempt from further taxation for local purposes, but urges that the controlling reasons in these cases do not apply to assessments for municipal improvements, for they are not taken into consideration in the computation of State taxes against public service corporations, and no act of assembly exempts them.

It is further conceded, that the fifty-foot wide strip originally taken by the New Castle & Beaver Valley Railroad "has been in continuous and undisputed possession of the owners thereof in fee, they did not sell it, neither was it taken from them, but only the use of the original tract was changed," and that in the reconstruction of its trackage there was placed on the original fifty-foot right-of-way, the supplemental tracks for loading and unloading freight, shifting of cars, etc. The appellee contends that such part of the land, especially that described in the lien, that is not used for the main line or right-of-way proper is liable to assessment for municipal improvements.

In Mt. Pleasant Borough v. B. & O. R. R. Co., 138 Pa. 365, it is held, that a municipal claim for the paving of a sidewalk along the roadbed of a railroad company cannot be sustained, as the paving cannot possibly confer a special benefit upon property known as the right-of-way, and the whole theory which justifies such a charge fails in this instance; but that the reason does not apply to a railroad passenger station, nor to ground used as a freight station or a lumber yard,—and in the exercise of police powers conferred upon boroughs, land used for such purposes and not forming part of the roadbed may be subjected to such charges. And in Allegheny City v. West-Penn R. R. Co., 138 Pa. 375, that a strip of land, the whole of which, is occupied by railroad tracks and which forms part of the roadbed of a railroad company, is not

liable to a municipal claim for the improvement of a street running parallel with and adjoining such roadbed, whether the railroad company owns the land in fee or only an easement thereon.

By many decisions water stations, depots, toolhouses, reservoirs, houses and gardens of locktenders and collectors, engines, and machines for raising cars up planes, collieries and engineers' houses, are exempt, on the ground that they are indispensable to the exercise of the railroad franchise: Phila. v. Phila. & Reading R. R. Co., 177 Pa. 292; South Fork Boro. v. Penna. R. R. Co., 251 Pa. 261; Ry. Co. v. Venango Co., 5 Pa. Superior Ct. 304.

The map attached to appellant's record shows that no buildings are constructed on the land in question, that it is used only for trackage purposes and the handling and movement of cars. The present defendant and its predecessor in title under our general railroad laws was authorized to appropriate for roadbed a strip of land of a given width in addition to appropriating land for siding and turnouts for the speedy and safe passage of its cars; land so taken would properly be termed roadbed, and be exempt from taxation, if of an area, reasonable in extent for the use of the railroad company's business: Phila. v. Phila. & Reading R. R. Co., supra.

It is a rational construction of the affidavit in this case, to hold, that the strip of land mentioned in this lien, 90 feet wide and 250 long, adjoining Newell avenue on the one side, and the trackage plan of the defendant company on the other side, is not an unreasonable amount of land, when, it appears that it is, "in the centre of a large industrial and railroad community, directly connected with one of our important trunk lines," particularly so when it is specially averred that, it is the only track available for the uses for which it is put in that vicinity "which is essential and indispensable to the railway in the exercise of its functions as a common carrier." In the face of this averment we cannot say, as a matter of law, that the area and location of this strip of land is excessive for

right-of-way purposes, which has been the turning point in a number of cases in the courts: Phila. v. Phila. & Reading R. R. Co., 1 Pa. Superior Ct. 237; Phila. v. Phila. & Reading R. R. Co., 177 Pa. 292; Ry. Co. v. Venango Co., 5 Pa. Superior Ct. 304, to which others might be added.

The controlling question appears to be, is the ground for which exemption is claimed so intimately connected and used with the main line transportation as to be considered an integral part of its roadbed right-of-way, so as to relieve it from exemption for municipal charges? The railroad officials are primarily the judges of this question, and without proof being adduced to contradict the facts as averred in the affidavit of defense, we must accept them as conclusive.

If the land described in the lien is an indispensable item of the main line operation, public policy forbids the separation of such property in fragments, and the lien will not be allowed to enforce such a result,—in order to determine whether the right to complain of the use made by a railroad of its right-of-way exists. The test that will generally apply most satisfactorily is, whether the use contemplated is inconsistent with the purpose for which the right-of-way was acquired; that is, whether it is additional to the purpose for which the land was taken, or on the other hand, reasonably in aid of those purposes. If it is of such a character, indispensable to the use of the main line right-of-way, it is exempt from liability to assessment for this improvement.

It is urged that because the railroad company changed its track from the original location to a new one, 100 feet eastward therefrom, and did not continuously use this land so originally taken for active railroad uses, that it was equivalent to an abandonment for such purposes. We cannot agree to this. The title never changed,—the railroad company could have at any time relaid their tracks. No other rights were affected. It was for the officials of the company to decide, when the relaying of

the tracks was necessary, so as to be in direct use for railroad purposes.  In a case like the present one, an intention to abandon must exist on the part of the company, and there must be some external act by which the intention is carried into effect.  The question of abandonment is one of intention, for the determination of the jury, dependent upon all the facts and circumstances described by the evidence in each particular case.

To hold the full width of its right-of-way, a railroad company need not cover it with tracks.  The transference of the track from an original location to a new one to meet the demands of safety to the public in avoiding a grade crossing, and the operation of its own trains, did not indicate that this original location was abandoned for railroad purposes, and the company could at any time resume such use.

The affidavit of defense averred sufficient facts to prevent a summary judgment.  The judgment of the court below is reversed, with a procedendo.