## In re: Petition of City of Pittsburgh, Etc.

*Municipalities—Tax assessments—Carriers—Right-of-way—Exemption from taxation—Building erected on right-of-way—Liability for taxation.*

Permanent stores, devoted to commercial purposes, erected on property and under the elevated tracks of a railroad company and within its right-of-way, are real estate within the local taxing statutes of January 4, 1859, P. L. 828, section 3, as well as under the general statutes.

Argued April 26, 1923. Appeal, No. 121, April T., 1923, by exceptant, from judgment of C. P. Allegheny Co., No. 1083, dismissing exceptions to the report of the

Board of Viewers In re Petition of the City of Pittsburgh for the appointment of viewers to ascertain the costs and expenses arising from the grading, regrading, paving, repaving, and otherwise improving of Ferry Street from Liberty Avenue to Water Street, and to assess the benefits for the new original grading and paving of the portion of Ferry Street as widened, being a strip of roadway twenty feet wide, extending from Liberty Avenue to Water Street, First Ward. Before PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Affirmed.

Exceptions to report of Board of Viewers. Before SHAFER, P. J.

The facts are stated in the opinion of the Superior Court.

The court dismissed the exceptions and confirmed the report absolutely. Exceptant appealed.

*Error assigned* was the decree of the court, quoting it.

*John S. Wendt,* and with him *Albert B. Graver,* for appellant.—Real estate of a public or quasi public corporation, like a railway company, essential to the exercise of its corporate franchises, is not subject to assessment and taxation in the absence of legislative authority imposing such taxes: Conoy Twp. Supervisors v. York Haven Electric Co., 222 Pa. 319; Federal Street & Pleasant Valley Pass. Ry. Co. v. Pittsburgh, 226 Pa. 419; City of Philadelphia v. Philadelphia, Wilmington & Baltimore R. R. Co., 33 Pa. 41; Junction R. R. Co. v. City of Philadelphia, 88 Pa. 424; Allegheny City v. West Penn R. R. Co., 138 Pa. 375; Phila. v. Phila. & Reading R. R. Co., 177 Pa. 292; New Castle v. Pittsburgh, Youngstown & Ashtabula Ry. Co., 72 Pa. Superior Ct. 135.

*H. M. Irons,* Assistant City Solicitor, and with him *Richard W. Martin,* City Solicitor, for appellee.

The property in question was not devoted to a public use in such manner as to be exempt from assessment: Phila. v. Phila. & Reading R. R. Co., 1 Pa. Superior Ct. 236; South Fork Boro. v. Pennsylvania R. R. Co., 251 Pa. 261; Alcorn v. Phila., 112 Pa. 494; Phila. v. Yewdall, 190 Pa. 412; Phila. v. Ginhart, 48 Pa. Superior Ct. 648; West Liberty Ave, 70 Pa. Superior Ct. 348.

OPINION BY LINN, J., July 12, 1923:

A jury of view assessed part of the cost of the original grading and paving of the newly widened portion (20 feet) of Ferry Street in the City of Pittsburgh, against four abutting tracts of appellant's land. As one tract, that lying between Liberty Street and Fourth Avenue, is occupied by appellant's railway station and office building, its liability to assessment is conceded. Appellant denies the power to assess the other three tracts extending from Fourth to First Avenues. Exceptions to the report of the viewers were filed; after hearing, they were dismissed, and the report was confirmed. This appeal is based on the proposition, as stated by appellant, that the three tracts are "devoted to a public use in such manner as to be exempt from assessment in this proceeding." No other question is raised.

The report of the viewers states that many years ago the property was acquired by appellant's predecessor in title, who erected thereon "a considerable number of elevated railway tracks supported on steel columns,......since......used......for the transportation of passengers and property to the terminus of said railway......[at 4th Avenue and Liberty Street]; that the steel structure supporting said columns abuts on the property line of Ferry Street and supports a considerable number of elevated tracks extending substantially parallel with Ferry Street.....and all the passenger trains.....pass over these tracks to the passenger train shed where passengers are discharged and received, which train shed immediately abuts on Ferry Street, and the remaining

tracks on said elevated structure are used for the transportation of freight to and from the freight terminal of said Railway Company, and all of said tracks are reasonably necessary and essential to the operation of said railway in the exercise of its franchise." The tracks are more than 30 feet above the level of Ferry Street; between abutments and supports, and under the overhead structure supporting the roadbed and tracks, appellant constructed a number of permanent stores for commercial purposes. Appellee's brief states they contain more than 3 acres of floor space. The viewers state that "The use of the space underneath said tracks, which has been converted into storerooms for the use of customers of said railway in handling freight received from said railway, is merely incidental to the main purpose and use of said steel structure......"

The storerooms front on Ferry Street, and are let to appellant's tenants. They enter on Ferry Street by doors at the street level, affording general access to and from the street for them and their patrons. Such tenant has the same use of Ferry Street as a tenant occupying a shop on the opposite side of the street without a railroad overhead would have, save that appellant's tenants may perhaps have some incidental local advantage in obtaining delivery of freight consigned to them. So long as appellant chooses to let to its tenants these commercial structures under its tracks, it enjoys the same kind of benefit of the Ferry Street improvement as the property owner on the opposite side of the street, the difference being only in degree, and that, in a legal sense, negligible. Of course, if the property is such part of the railroad franchise as legally to exempt it from this assessment, it is immaterial whether it is benefited or not.

The rules of law applicable to such facts are clear. They were fully considered by this court and by the Supreme Court in separate cases arising out of the construction of a sewer in Richmond Street, Philadelphia, along railroad property: Phila. v. R. R. Co., 1 Pa. Su-

perior Ct. 236, and Philadelphia v. R. R. Co., 177 Pa. 292; the case in this court was decided generally and without regard to the local Act of April 21, 1858, P. L. 385, while in the Supreme Court, that statute was held to justify the lien.

Without narrowly defining the expression "right-of-way," it appears by those opinions to be settled that neither the right-of-way of a railroad company nor other property, part of the railroad franchise, is subject to lien or assessment for street improvements, and that other land owned by a railroad company is liable.

Our inquiry is, how do those rules affect this case. Appellant's brief asserts, "The land in question against which said tax is assessed was, at the time said improvement was made, the roadbed and right-of-way of the appellant and therefore the assessment fails." The difficulty with that contention is, appellant, as well as its predecessor, has declared the land to be more than roadbed and right-of-way, and the additional quality so voluntarily imposed, takes it out of the exempted class and renders it assessable.

Appellant's roadbed with its use as a railroad, was elevated so high above the level of the street that it was enabled to, and did put to, permanent, nonrailroad, commercial use a part of the land below the roadbed, a use, too, which requires the enjoyment of the street improvement. These storerooms are real estate; they are permanently attached to the soil; they are in no sense necessary, or even useful to the operation of the road; they are not part of the railroad itself; the quality of the railroad service rendered to the general public would not be affected if they were removed to-morrow. Not only are these storerooms real estate in the general legal sense, but they are real estate within the local taxing statute of January 4, 1859, P. L. 828, section 3; R. R. v. Pittsburgh, 104 Pa. 522, 540; they are structures "of convenience only" within R. R. v. Pittsburgh, 221 Pa. 90, 93. Appellant's roadbed and right-of-way are not liable,

and the assessment is not understood to be against them; it is against part of the land under them, which is not used, and apparently not necessary to support the roadbed; it is not against the pillars, supports and abutments and the land occupied by them, for they are essential to the support of the roadbed, but it is against the occupied area (said to be over 3 acres) between them, for many years not occupied for railroad purposes, and by appellant's declaration not necessary therefor. Of course, nothing in the nature of the assessment can prevent appellant from occupying all or part of such area when in its judgment necessary for the enjoyment of its franchise.

Nor can we agree with appellant's contention that "The decisions holding that land of a railway company abutting on the line of the improvement, may be sold on a municipal lien are not applicable to a case like the present, where the land in question is all used as a roadbed and the tracks abut directly on the improvement." The pertinent decisions were recently summarized as follows: "The fact that the lien may include ground upon which is laid parts of the roadbed and tracks of the railroad company, does not invalidate it. In Philadelphia v. Philadelphia & Reading R. R. Co., 177 Pa. 292, that question was considered, and it was held that judgment might be had on a claim filed against ground over which extends the right-of-way and roadbed of the railroad; but that a purchaser at sheriff's sale under such judgment, would take the land subject to the railroad's easement. Mr. Justice DEAN, there said (p. 298): 'While we can from this record determine that a large part of this one thousand five hundred feet is not roadbed, we cannot say just how much is; but that fact prevents not the entry of judgment; the plaintiff has a lien on the land in excess of that not subject to municipal assessment; a sale of the land passes to the purchaser nothing the lien does not bind; he takes it subject to defendant's easement......The city has its judgment in

570   In re: PETITION OF CITY OF PITTSBURGH.

rem against land on which defendant had, under the law, before the filing of the municipal lien, a visible, notorious easement or right of way to the extent of its roadbed ......The roadbed running to the river through this yard being necessary to the existence of the road as a common carrier cannot be taken from it by a proceeding in rem against the yard; the purchaser takes subject to the easement, just as the purchaser of land at sale under a mortgage takes subject to an open, visible easement antedating the mortgage.' The court below did not, therefore, err in accepting a verdict and in entering judgment for the full amount of the claim; if execution should be issued and there should be a sale upon the judgment, the purchaser would take the land subject to appellant's right of way over the roadbed": South Fork Boro. v. Penna. R. R. Co., 251 Pa. 261, at 266. See also Phila. v. R. R. Co., 1 Pa. Superior Ct. 236, at 248 to 253.

Horizontal, instead of perpendicular ownership in land is not novel (the mining cases have long furnished examples) nor is there any legal difficulty in subjecting either estate to easement. And this would seem of local importance, for, as the learned president judge of the court below says in his opinion: "In a city whose topography is such as that of Pittsburgh, it is conceivable that a railway might have a right-of-way several hundred feet above the streets, and have very large buildings built under it, upon the land owned by the railway. In such a case it could not be pretended that these buildings were exempt from municipal assessments for the improvement of the abutting streets, and there is no difference between such a case and that presented here, except one of degree."

The order dismissing the exceptions is affirmed.